# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

## MARY JOHNSON, ET AL. v. LEBONHEUR CHILDREN'S MEDICAL CENTER, ET AL.

### A Direct Appeal from the Circuit Court for Shelby County
Nos. 66041-9 and 74022-9     The Honorable Robert L. Childers, Judge

---

### No. W1999-01719-COA-RM-CV - Decided May 25, 2000

---

In this medical malpractice case, the plaintiff sued a hospital and several physicians, including a resident physician in the University of Tennessee training program.  The complaint alleges, among other things, that the hospital is liable to plaintiff pursuant to *respondeat superior* for alleged negligence on the part of two University of Tennessee resident physicians.  The hospital sought partial summary judgment as to any liability by virtue of acts of the resident physician, because the resident physicians are immune from suit pursuant to the Tennessee Claims Commission Act; thus, they assert that since the agent or servant cannot be held liable, the principal or master cannot be held liable.  From the order of the trial court denying hospital a partial summary judgment, Hospital was granted an interlocutory appeal.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which HIGHERS, J., and FARMER, J., joined.

Thomas R. Prewitt, Jr.; Robertson M. Leatherman; Parke S. Morris, Memphis, For Appellant, Lebonheur Children's Medical Center

Randall L. Kinnard; Steven R. Walker, Memphis, For Appellees

**OPINION**

This is a medical malpractice case. Plaintiff, Mary Johnson, individually and on behalf of her daughter, Amman Johnson, sued LeBonheur Children's Medical Center (hereinafer referred to as LeBonheur), Donald C. Watson, M.D., Michael Citak, M.D., Michael Barron, M.D., Pediatric Anesthesiologists, P.A., and U. T. Medical Group, Inc., seeking damages for injuries incurred by Ammon Johnson when she suffered cardiac arrest that led to permanent brain damage while undergoing surgery for a heart condition known as Tetralogy of Fallot. The complaint alleges, *inter alia*, that Dr. Citak and Dr. Martindale, both resident physicians in the University of Tennessee training program, were acting as agents and servants of defendant, LeBonheur, when they committed negligent acts resulting in injuries to plaintiff, and that LeBonheur is liable for their alleged negligence by virtue of *respondeat superior*.[1] Because defendant, Dr. Citak, was a medical resident in the University of Tennessee training program and technically an employee of the State of Tennessee, claims against him personally were transferred to the Tennessee Claims Commission by consent order. Since Dr. Martindale was not named as a defendant, there was no order entered concerning the allegations about him.

On December 8, 1999, the trial court entered an order denying LeBonheur's motion for partial summary judgment "on the issue of LeBonheur's liability based upon the asserted negligence of two physicians, Michael Citak, M.D., and Michael Martindale, M.D., who were medical residents working at Lebonheur Children's Medical Center on rotations, while in the residency program of the University of Tennessee."

LeBonheur was granted a Rule 9, Tenn.R.App.P., interlocutory appeal, and the only issue for

---

[1] Because of the narrow issue involved in this appeal, we do not find it necessary to further relate the allegations of the lengthy and detailed complaint.

review is whether LeBonheur can be held vicariously liable for the acts of the resident physicians while they were acting as Lebonheur's agents when the residents are immune from suit as a matter of law.

LeBonheur asserts that Tennessee law is clear that a master cannot be held liable pursuant to *respondeat superior* for the actions of a servant when the servant is immune from suit. Lebonheur cites several authorities for this proposition of the general law. We have no quarrel with these authorities. However, we have found no authority dealing with the factual situation presented in the instant case, i.e., when a servant's immunity is granted by statute for the servant's acts while acting for the state, and where the state's immunity is waived and the servant is acting for another entity.

Art. I, Sec. 17, Constitution of the State of Tennessee provides in part: "Suits may be brought against the state in such a manner and in such courts as the legislature may by law direct."

T.C.A. § 20-13-102 (a) (1994) provides:

> **20-13-102. Actions against state prohibited.** - (a) No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

Although the state has not provided for tort actions to be brought against the state and its officers in state courts, claims are allowed against the state pursuant to T.C.A. § 9-8-307 (1999), which provides in pertinent part:

> **9-8-307. Jurisdiction - Claims - Waiver of actions - Standard for tort liability - Damages - Immunities - Definitions - Transfer of claims. -** (a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state

employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories:

* * *

(D) Legal or medical malpractice by a state employee; provided, that the state employee has a professional/client relationship with the claimant;

* * *

(b) Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee. The waiver is void if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment.

* * *

(h) State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. For purposes of this chapter, "state officer" or "employee" has the meaning set forth in § 8-42-101(3).

The statutory immunity granted state employees is basically a *quid pro quo* situation; that is, the state, as the master or employer, becomes subject to liability while at the same time the servants or employees are relieved of liability. Although the state and the state employees remain immune from suit in the state courts, provision for relief is provided by the alternative forum.

In *Ridings v. Ralph M. Parson's Co.,* 914 S.W.2d 79 (Tenn. 1996), our Supreme Court held that an employer who was immune by virtue of the workers compensation law could not be attributed fault in the employee's third party action.

In *Snyder v. LTG and Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997), our Supreme

Court, pursuant to Rule 23, Rules of the Supreme Court, considered a certified question of law from

the federal court. The primary question presented was:

> 1. Whether products liability defendants in a suit for personal injuries based on allegations of negligence and strict liability in tort **may introduce evidence at trial** that the plaintiff's employer's alteration, change, improper maintenance, or abnormal use of the defendants' product proximately caused or contributed to the plaintiff's injuries. (Emphasis added).

955 S.W.2d at 253. As the Court noted, an employer cannot be found to be the proximate or legal

cause of the plaintiff's injuries, because the employer is immune from tort liability under T.C.A. §

50-6-108 (a). *Id.* at 256. The Court went on to say, however, that the fact that the employer cannot

be found to be the proximate or legal cause of the plaintiff's injuries does not mean "that the

employer cannot be found by the trier of fact to have been a cause in fact of the plaintiff's injuries."

*Id.* at 256. The Court explained:

> If the rule were otherwise, the defendants would effectively be precluded from presenting a defense. A defense that the product was not defective or unreasonably dangerous when it left the defendants' control would not be credible unless the defendants were permitted to introduce evidence as to what actually happened to the product leading up to the incident that injured the plaintiff. Excising the employer from that discussion would be tantamount to drawing a line which would make discussion of the case to be tried difficult, if not impossible. The end result would be that the jury would not hear evidence of the true facts surrounding the product that caused the plaintiff's injuries but, nonetheless, be asked to determine fault and hence liability for damages. Prohibiting the introduction of such evidence could result in a defendant, who was not a cause in fact of the plaintiff's injuries, being required to pay for the harm anyway.

*Id.* at 256.

The Court concluded that the jury may consider all evidence relevant to the event leading up to the

incident that injured the plaintiff and then gave instructions as to how this evidence should be

utilized:

> The defendants may not, however, ask the jury to assign fault to the employer. That is, the defendants may not take the legal position that the employer's actions were the legal cause of the plaintiff's injuries. The jury should be instructed that it may consider the actions of the employer only in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants. Also, the jury should be instructed that it may not, in making that determination, assess fault against the employer. Finally, the trial judge should give an instruction that lets the jury know that the employer's legal responsibility will be determined at a later time or has already been determined in another forum.

*Id.* at 257.

We believe the ***Snyder*** decision is instructive on the issue before the Court. LeBonheur argues that because the residents are immune, LeBonheur should be discharged as to any liability for their actions. However, in this case, plaintiffs, as the defendants in ***Snyder***, are not attempting to place legal liability on the immune parties. In ***Snyder***, the Court determined that notwithstanding the immunity of plaintiff's employer, the defendants could introduce proof of the employer's actions to prove cause in fact. If, in fact, the proof establishes the elements of *respondeat superior* between LeBonheur and the residents, the peculiar relationship of the parties justifies a departure from the general rule of nonliability of the master as set out above. Should the facts justify the establishment of a master/servant or principal/agent relationship, the resident physicians who are immune from personal liability by virtue of their status as state employees can also be servants of LeBonheur in a transaction for which there would normally be no immunity for a servant or agent. Under these circumstances, plaintiffs should be allowed to introduce proof to establish responsibility on the part of LeBonheur for the residents' actions and proof concerning the residents' actions.

We justify our decision by analogizing with the ***Snyder*** opinion: If the rule were otherwise,

the plaintiffs would effectively be precluded from presenting a case of liability against LeBonheur. The case against Lebonheur would not be credible unless the plaintiffs were permitted to introduce evidence as to what the residents actually did leading up to the injuries. Excusing the residents' actions from that discussion would be tantamount to drawing a line which would make discussion of the case to be tried difficult, if not impossible. The end result would be that the jury would not hear evidence of the true facts surrounding the incident that led to plaintiffs' injuries, and nonetheless, would be asked to determine fault of LeBonheur and the other defendants and hence liability for damages. Prohibiting the introduction of such evidence would enable a defendant responsible for another's action to escape liability when such action was the cause in fact and the proximate cause of the plaintiff's injuries.

Therefore, we hold that the immunity of the resident physicians provided by the Tennessee Claims Commission Act does not, as a matter of law, grant immunity to the resident physicians' master or principal in an established master/servant, principal/agent relationship.

Accordingly, the order of the trial court denying summary judgment to LeBonheur is affirmed. Costs of the appeal are assessed against appellant, Lebonheur Children's Medical Center, and the case is remanded to the trial court for such further proceedings as necessary.